## Fulmer Estates

*George Coffin, Jr.,* for accountants.
*John Oldt,* for life beneficiaries.
*Robert S. Taylor,* for St. Luke's Hospital.

FRANCIOSA, *J.*, May 19, 1976—This case comes before us on objections of the life beneficiaries to the audit statement for distribution filed by the acting trustees of testamentary trusts in the estates of Joseph H. Fulmer and Lottie Cope Fulmer, deceased.

Initially, we note that this is the third time questions have arisen during the administration of the two estates.

The first question arose upon the death of George W. Fulmer, a life beneficiary under the will of Lottie Fulmer.[1] The issue in that proceeding was whether

---

1. He survived testatrix, but died on September 21, 1953; it appears that his was the first death among the individual life beneficiaries.

676

the income from the share of George W. Fulmer should accumulate in the hands of the trustees until the termination of all of the life estates. In a decree nisi in the Orphans' Court of Northampton County entered by Judge Carleton T. Woodring, a finding against an accumulation was made. As a result, St. Luke's Hospital, sole remainderman,[2] was permitted to receive income previously paid to a deceased life beneficiary until the corpus was to be distributed. See in re Estate of Lottie Cope Fulmer, No. 280-1954, Orphans' Court Division (1955).

Approximately ten years later, another proposed schedule of distribution of the acting trustees was challenged. Again, the controversy concerned the accumulation of income. And, interestingly enough, the life tenant whose death was involved was the same George W. Fulmer. Evidently, the holding reached in 1955 in the Estate of Lottie Cope Fulmer was not applied to the estate of Joseph H. Fulmer. The dispute was referred once more to Judge Woodring who awarded immediate distribution of the income to St. Luke's Hospital. The ruling was based on his earlier decision in the Estate of Lottie Cope Fulmer, supra. See Estate of Joseph H. Fulmer, no. 37-1945, Orphans' Court Division (1965).

Now, in connection with the trustees' accounting for the period from August 13, 1965, to January 2, 1975, a new and much more complicated controversy has arisen between the life beneficiaries and the trustees.

In addition to the above history of the case, a review of the facts is necessary for a full under-

2. St. Luke's Hospital is also a life tenant entitled to 30 percent of the income.

standing of the issues raised by the current proceedings.

The wills of Joseph H. Fulmer and Lottie Cope Fulmer are reciprocal in nature. Therefore, the trustees of the Joseph H. Fulmer Trust and the Lottie Cope Fulmer Trust are the same; the beneficiaries of each trust are the same; the purposes and goals of the separate wills and trusts are substantially the same; and the trusts have the same termination date, i.e., upon the death of the last of the life tenants.

When Joseph H. Fulmer died on May 14, 1944, the main asset retained by the Joseph H. Fulmer Estate was a proprietorship known as "Green Acre Farms." The lands used by the proprietorship prior to the death of Joseph H. Fulmer were owned jointly by him and Lottie Cope Fulmer, his wife. Upon his death, this land became the sole property of his wife. Thereafter, on March 18, 1953, she died and the land became the principal asset in the estate of Lottie Cope Fulmer and in the Lottie Cope Fulmer Trust. At present, the Lottie Cope Fulmer Trust leases the land to the Joseph H. Fulmer Trust.

In the fiscal year ending March 31, 1969, the proprietorship lost a total of $25,125 as follows: $9,606 in its farming operation, plus depreciation of $11,969, and trustees' commission of $3,550.

In the fiscal year ending March 31, 1972, the proprietorship lost a total of $26,461 as follows: $11,302 in its farming operation, plus depreciation of $11,609 and trustees' commission of $3,550.

Under the Principal and Income Act of 1947, these losses have been charged to the principal account of the Joseph H. Fulmer Estate.[3]

---

3. Audited financial statements prepared by D. H. Messer and Company for the years ending March 31, 1968, to March

As a consequence of the above losses, the business was compelled to borrow funds from banks and the Estate of Lottie Cope Fulmer to cover its operational expenses. These loans all carried interest which was paid from the business. For the years 1968 through 1975, payments of interest totaled $17,392.34.

The audit statement for distribution presently before us for confirmation of administration to date, includes a reference to the business losses sustained by the operation of Green Acre Farms. In the addendum to paragraph 5, the following appears:

". . . In view of the foregoing, it is obvious that the Trustees must continue to borrow from year to year to maintain an adequate cash position to enable them to continue the operation of Green Acre Farms and carry out the Testator's intent. The borrowing has also created an additional, continuing expense to the Trust. It has also become necessary to borrow more sums to operate Green Acre Farms because of rising costs of operation and increased costs of replacing necessary equipment and machinery. The Estate of Lottie Cope Fulmer possesses sufficient stocks, bonds and cash to adequately supply all credit needs of Green Acre Farms."

The trustees then go on to consider two alternatives. First, they discuss the possibility of a merger of the trusts. If this is unacceptable to the court, the trustees then urge that they be permitted to take

---

31, 1975, were also admitted as physical exhibits. The audited statements reflect operational losses of Green Acre Farms in an amount which reduces the losses for 1969 and 1972 by a total of $6,860. However, this discrepancy between the trustees' account and that of the auditors has no bearing on the questions raised by the instant proceeding.

capital from the Lottie Cope Fulmer Trust and add it to the capital account of the proprietorship in the Joseph H. Fulmer Trust. The trustees conclude their assessment of the situation by recommending a merger of the two trusts.

In order to obtain the court's approval of their recommendation, the trustees have framed two questions in paragraph 5 of the pending audit statement for distribution. The questions read as follows:

"Will the Court permit the merger of the trust created by the last will and testament of Joseph H. Fulmer with the trust created by the last will and testament of Lottie Cope Fulmer, where the trustees are the same, the beneficiaries are the same, the purposes of the trusts are the same, the powers given to the trustees are the same and the termination of the trusts are the same?

"In the alternative, will the trustees be permitted to contribute additional capital from the principal of the estate of Lottie Cope Fulmer, Orphans' Court #280-1954, to the proprietorship of Green Acre Farms, an asset of the Joseph H. Fulmer Estate, Orphans' Court #37-1945, under the terms of the last wills and testaments of the said Joseph H. Fulmer, deceased, and Lottie Cope Fulmer, deceased, as a business which was carried on by Lottie Cope Fulmer at the time of her decease?"

The affirmative ruling being sought by the trustees has encountered a series of objections filed on behalf of the life beneficiaries.

A set of objections filed by St. Luke's Hospital, sole remainderman, protest against either the merger of the assets of the two trusts or the contribution of capital from the principal of the Lottie Cope Fulmer Trust to the proprietorship of Green

Acre Farms which is an asset of the Joseph H. Fulmer Trust. The hospital also lodges two objections to the accounting as rendered by the trustees. Those objections are:

(1) That the trustees failed to reimburse principal from net earnings in subsequent years for the net operational losses of Green Acre Farms for the fiscal years ending March 31, 1969 and ending March 31, 1972.

(2) That the trustees failed to set aside each year a reserve from income for operating expenses of the Green Acre Farms and as a result the trustees borrowed funds each year "to maintain an adequate cash position to enable them to continue the operation of Green Acre Farms" which created an additional continuing expense to the trust.

The objecting individual life beneficiaries join in the hospital's protest against a merger of the two trusts. But, they take a different position from the hospital on the other issues. It is the position of the individual life beneficiaries that the power to advance capital from the Lottie Cope Fulmer Trust to cover the operation of Green Acre Farms is already vested in the trustees and no permission from the court is required. Regarding the hospital's objection to the fact that the trustees have not used income realized from the operation of the business to reimburse the business for losses sustained in prior years, the individual life beneficiaries disagree with the hospital and contend that such losses "shall fall upon principal." And, on the question of a reserve from income for operating expenses, the life beneficiaries argue that the granting of the hospital's request is contrary to the terms of the governing wills.

We will now proceed to discuss those issues which must be resolved by this court.

## I. MERGER

Although the two trusts in question are overlapping with respect to all of the particulars effecting their administration, we cannot approve a merger. It may well be that as a matter of expediency these trusts should be combined, and it is hard to conceive a case more suitable for combination, but the trustees have not been able to lead us to any authority permitting a merger of noncharitable trusts. Our own independent research convinces us that the Probate, Estates and Fiduciaries Code limits the combination of trusts to those created entirely for charitable purposes. See Act of June 30, 1972, P.L. 508 (No. 164), 20 Pa.C.S. §6109. Also, Brooks Estate, 3 D. & C. 2d 426, 5 Fiduc. Rep. 195 (1955).

## II. INCORPORATION

A possibility of incorporation of the business conducted by Green Acre Farms is mentioned by the trustees. However, no interested party is a proponent of such an alternative. Since this court has no reason for a sua sponte pursuit of this possibility, it is dismissed without further discussion.

## III. CAPITAL CONTRIBUTIONS

The applicable will provisions which we choose to quote appear as paragraph 4 of Joseph Fulmer's will and paragraph 10 in both the will of Joseph H. Fulmer and that of Lottie Cope Fulmer. Those provisions read:

"4. My wife, Lottie Cope Fulmer, shall have full power to carry on each and every business which I may be interested in during such period as she shall think fit and for that purpose to retain and employ therein the capital that I may have invested therein at the time of my decease, and such additional capital as she may think fit to advance from time to time from my Estate in her hands; with power to employ, at such salary as she shall think fit, a Manager of said business, and generally to act in all matters relating to said business as if she were beneficially entitled thereto, and with power to delegate all or any of the powers invested in her in relation to said business to any person or persons whom she may think fit."

"10. My said Trustees are hereby authorized to carry on the trade or business now carried on by me, during such period as they shall think fit, and for that purpose to retain and employ therein the capital that I may have invested therein at the time of my decease, and such additional capital as they may think fit to advance from time to time from my Estate in their hands, with power to employ, at such a salary as they shall think fit, a Manager of said business, and generally to act in all matters relating to the said business as if they were beneficially entitled thereto, and with power to delegate all or any of the powers vested in them in relation to the said business to any person or persons whom they may think fit; and my said Trustees shall be free from all responsibility, and be justly indemnified out of my estate in their hands, in respect of any loss arising in the said business."

As the survivor, Lottie was authorized under paragraph 4 of her husband's will to advance capital from his estate to carry on businesses he was

interested in during his lifetime. In carrying on such business activities, she was, of course, free to contribute her own assets. She had an incentive to do so, since she was a life beneficiary under her husband's will; moreover, her own will demonstrated a clear intent to perpetuate the same estate assets passing to her as the survivor of the marriage for the same estate plan as laid in her husband's will. With that intent manifested within the four corners of her will, we do not think it would be proper to place the trustees under a greater handicap in administering the business under paragraph 10 of the wills than Lottie herself was under while she carried on the business pursuant to paragraph 4 of her husband's will.

Because we believe the testamentary intent behind the use of reciprocal wills was to create an estate plan designed to provide income for designated life beneficiaries of the trusts, we find it necessary to provide the trustees with the means to accomplish that purpose. Moreover, in granting the trustees the power to take capital from the Estate of Lottie Cope Fulmer to operate Green Acre Farms, we further believe that we are doing nothing more than affirming a reasonable construction of the separate instruments before us for interpretation.

Although we feel that the above route is the best course to follow, we would arrive at the same result by following a relatively simple alternative route. Paragraph 10 of the will authorizes the trustees "to carry on the trade or business *now carried on by me* [the testatrix]." (Emphasis supplied.)

"It is an established rule of construction that words will not be read into a will unless it is certain beyond a reasonable doubt that the testator has not expressed himself as he intended and supposed he

had done." McConnell's Estate, 266 Pa. 294 at 297, 109 Atl. 846 at 846 (1920).

The words in paragraph 10 refer to a business carried on by testatrix. The words do not limit the trustees to one owned by her, or one operated by her as a sole proprietorship. After her husband's death, whether as life beneficiary, or as executrix, Lottie Fulmer, through her designated agents, continued to carry on the business called "Green Acre Farms." Therefore, we conclude that the trustees are authorized to advance sums to Green Acre Farms as a business carried on by testatrix.

## IV. OBJECTIONS TO THE ACCOUNTING

The two objections of the hospital concerning the audit itself center around charges to principal in fiscal years ending March 31, 1969 and March 31, 1972. As previously noted, the fiscal years 1969 and 1972 were the only years in which operating losses were sustained by the Green Acre Farms proprietorship. Specifically, the following two issues are raised by objections nos. 1 and 2 filed on behalf of the hospital:

1. Whether the losses of the proprietorship for the years ending March 31, 1969, of $25,125 and ending March 31, 1972, of $26,461, or a total of $51,586, or only part of these are properly charged to principal?

2. Whether 1968 and 1972 business losses initially charged to principal under section 7, paragraph 4 of the Principal and Income Act of 1947, Act of July 3, 1947, P.L. 1283, 20 P.S. §3470.7, now section 8107(d) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No.

162), 20 Pa.C.S. §8107(d), should be reimbursed from future income from the business?

In challenging the amount of losses charged against principal, the hospital contends that it was impermissible to charge the trustees compensation to the principal. As support for its position, the hospital relies on the case of Schultz Trust, 25 Fiduc. Rep. 413 (1975). We think there are two reasons for finding Schultz inapposite.

First, the court in Schultz notes that there was no authorization that interim commission would be paid out of the principal. In the instant matter, compensation for the trustees had been paid and charged according to a fee agreement approved by Lottie Cope Fulmer in 1945. Such agreement contained the following provisions:

"2. Under the Will of your late husband, Joseph H. Fulmer, we are named as the Corporate Trustee after your death, and will be charged with the management of Trust Estates, provisions for which are almost identical with those contained in your own Will. Since the interests of your husband's Estate, particularly the business interest known as Green Acre Farms, are practically one and the same with your own, you will, we feel sure, readily recognize the economy of considering the two Estates as one, for the purpose of computing the Trustee's compensation, and you, therefore, direct us to charge your husband's estate a proper amount for services rendered to it, and agree that the balance of our fees for service to both estates, based on a cost analysis of both estates, shall be charged to your estate.

"3. Due to undetermined circumstances, it is your direction that your Executors and Trustees shall be given absolute discretion in charging their

compensation wholly to principal, or to income; or partly to each."

Secondly, our attention has been guided to section 7185(b) of the Probate, Estates and Fiduciaries Code, which reads as follows:

"Compensation: (b) Allowed out of principal or income. Neither the fact that a fiduciary's service has not ended nor the fact that the trust has not ended shall be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust. Whenever it shall appear either during the continuance of trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts, shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him. The provisions of this section shall apply to ordinary and extraordinary services alike."

The Schultz case involved an attempt by the trustees to obtain compensation out of the principal for ordinary services to a perpetual charitable trust. In ruling the above-quoted section inapplicable to the Schultz case, the court pointed to the following words in section 7185: " . . . either during the continuance of the trust or at the end." We submit that the Schultz court was influenced by the perpetual nature of the trusts involved. The trusts in the within matter are not perpetual trusts; both will tinuance of the trust or at the end." We submit that beneficiary and the corpus will then pass to the remainderman, St. Luke's Hospital.

Therefore, in addition to the fee arrangement

agreement signed by Lottie Fulmer, we believe that section 7185(b), supra, can be used as further support for the payment of interim commissions out of principal.

The last issue remaining for disposition, namely, a reserve from income "to maintain an adequate cash position" for the operation of Green Acre Farms, can be summarily handled. On this issue, we agree with the conclusion arrived at by the individual life beneficiaries. That is to say, a reserve made up of a part of the net income is contrary to the express terms of the wills. In paragraph 12, the trustees are directed "to annually pay the net income thereof " to the life beneficiaries.

Prior to the entry of a decree nisi, we pause for a moment to acknowledge that we are mindful of the hospital's legitimate need to zealously protect the value of its remainder interest. Nonetheless, we cannot construe the testamentary instruments so narrowly so as to defeat their clear intent to generate income for the benefit of the life beneficiaries. It is possible that a time could come to pass when this objective would place too heavy a burden on the assets of the estates. Obviously, under such circumstances, the hospital could not stand idly by and permit the assets to be depleted for a lost cause. While we recognize this contingency, we hasten to add that a picture of long-range unprofitability for Green Acre Farms has not been developed at this point in time.

In view of the foregoing discussion we enter the following

## DECREE NISI

And now, May 19, 1976, it is hereby adjudged, ordered and decreed that the submitted decree of

confirmation and distribution for the period from August 13, 1965, to January 2, 1975, be approved as rendered by the trustees.

In addition, we enter the following rulings with respect to the questions raised in paragraph 5 of the audit statement for distribution filed by the trustees in connection with their accounting for the period from August 13, 1965 to January 2, 1975:

(a) The trustees' request for a merger of the trust created by the will of Joseph H. Fulmer with the trust created by the will of Lottie Cope Fulmer is denied.

(b) The trustees' alternative request that they be permitted to contribute additional capital from the principal of the Estate of Lottie Cope Fulmer to the proprietorship of Green Acre Farms, an asset of the Joseph H. Fulmer Estate, is granted. And, this affirmative ruling shall empower the trustees to pursue the alternative of capital contributions until such power is terminated or modified by a subsequent order of court.

The clerk of the Orphans' Court is directed to enter this decree nisi, the same to become absolute unless exceptions are filed thereto within 20 days.